UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ayaz A. Khattak,                                    Civil No. 06-1738 (JMR/FLN)

     Plaintiff,

     v.                                          **REPORT AND**
                                                   **RECOMMENDATION**
Department of Homeland Security and
U.S. Citizenship and Immigration Services,

     Defendants.

_____

*Pro Se* Plaintiff.
A.U.S.A. Friedrich A.P. Siekert, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 30, 2007, on Defendants' Motion to Dismiss [#17]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendants' Motion to Dismiss [#17] be granted.

## I.   FINDINGS OF FACT

Plaintiff Ayaz A. Khattak brought this action against Defendants, the United States Department of Homeland Security and United States Citizenship and Immigration Services (hereinafter "Defendants"). Plaintiff purportedly is suing Defendants pursuant to 8 U.S.C. § 1159, the immigration statute which provides for the adjustment of status of refugees, and the settlement agreement orchestrated between the U.S. Citizenship and Immigration Service (hereinafter "U.S.C.I.S.") and a class of plaintiffs seeking asylum-based adjustment of status in Ngwanyia v. Gonzales, 376 F. Supp. 2d 923 (D. Minn. 2005).

For purposes of this motion, the Court accepts all factual allegations made by the Plaintiff

as true.  The United States granted Plaintiff asylum from his home country of Pakistan on August

5, 1998.  (Compl. p. 1.)  On November 29, 1999, he applied to become a lawful permanent resident

pursuant to 8 U.S.C. 1159(b).  (Compl. p. 1.)  The U.S.C.I.S. approved his application on February

9, 2006.  (Attachment to Compl.)  Based on the one-year effective date rollback afforded asylum-

based adjustments under 8 U.S.C. § 1159(b), Plaintiff's lawful permanent resident status

retroactively became effective February 9, 2005.

Before May 11, 2005, the United States limited the number of asylum-based status

adjustments it would grant each year to 10,000.  See 8 U.S.C. § 1159(b) (2004).  The U.S.C.I.S.

considered all asylum-based adjustment applications in the order in which they were received.  Due

to the increasing number of asylum grants and the numerical cap placed on adjustments, however,

a large backlog of applications accrued.  (Def. Mem. p. 2 - 3.)  In 2004, U.S.C.I.S. had over 160,000

pending asylum-based adjustment applications.  Id.

In 2002, a number of individuals awaiting asylum-based adjustment of status filed a class

action lawsuit in the United States District Court, District of Minnesota.  (Def. Mem. p. 3.)  They

alleged that, in years past, U.S.C.I.S. had failed to meet its statutory requirement to use all of the

available 10,000 asylum-based adjustment numbers.  Ngwanyia v. Gonzales, 302 F. Supp. 2d 1076,

1077 (D. Minn. 2004).   The court found that over 21,000 numbers had not been used and ordered

U.S.C.I.S. to utilize those numbers.  Id. at 1083.  The parties reached a settlement agreement on July

12, 2005, in which the U.S.C.I.S. agreed to utilized the unused numbers over a three-year period and

to provide special status-inquiry and dispute resolution procedures to aliens with pending asylum-

based adjustment of status cases.  See Ngwanyia, 376 F. Supp. 2d at 927.  The court maintained

jurisdiction over material disputes arising under the agreement, but limited the Ngwanyia class to

2

aliens with pending asylum-based adjustment cases.  Id.  Congress subsequently amended 8 U.S.C. 1159(b), removing the annual cap on asylum-based adjustments and permitting U.S.C.I.S. to process as many applications as resources permit.  See REAL ID Act, Pub. L. 109-13 Div. B, § 101(g)(1)(B)(i), 119 Stat. 305, May 11, 2005.

Plaintiff's complaint alleges that Defendants did not comply with the terms of the Ngwanyia settlement agreement.  (Compl. p. 1.)  He complains U.S.C.I.S. delayed his application for asylum-based adjustment, that it ignored its rules and regulations, and that the Government is treating him harshly.  (Compl. p. 4.)  Among other things, Plaintiff further alleges that the Defendants "bang on the wall and beat objects," that the Defendants are "in possession of plaintiff's apartment and taxicab keys," and that the Defendants have "contaminated plaintiff's food with drugs several times, and then were calling from outside to implicate plaintiff with crimes."  (Compl. p. 3.)  He requests the Court "to bring quick compliance of defendant with 8 U.S.C. [§] 1159(b) and settlement agreement," and "to direct defendant to respond to plaintiff written notice and disclose information in connection with dispute resolution section D(a)(b) of settlement agreement."  (Compl. p. 4.)

Defendants now move to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or failure to state a claim upon which relief may be granted.  For the reasons that follow, the Court recommends that Defendants' motion be granted.

## II.   STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint for lack of subject jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  The plaintiff has the burden of proving jurisdiction. Daimlerchrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861 n.3 (2006).

3

A federal court's subject matter jurisdiction under Article III is limited to actual cases and controversies. Id. at 1861. To establish federal jurisdiction over a claim, a plaintiff first must establish his standing to bring the claim. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Article III standing requires a showing that plaintiff suffered an injury-in-fact, that the cause of the injury be fairly traceable to challenged action of the defendant, and that the relief plaintiff seeks will redress the injury. Id. at 560-61.

The plaintiff must further establish the Court's subject matter jurisdiction in his complaint by making a short, plain statement of the grounds for the court's subject matter jurisdiction. Fed. R. Civ. P. 8(a). This requirement is particularly important in a suit against the Government, because the United States enjoys sovereign immunity from suit unless Congress has specifically consented to be sued. See United States v. Testan, 424 U.S. 392, 399 (1976).

For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. In re Navarre Corp. Sec. Litig., 299 F.3d 735, 738 (8th Cir. 2002). In considering a motion to dismiss under Rule 12(b)(1), a court may consider matters outside the pleadings. Osborn v. United States, 918 F.2d 724, 728 n.4 (8th Cir. 1990). Pro se pleadings should be liberally construed, and are held to a less stringent standard when challenged by motions to dismiss. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Although it is to be liberally construed, a pro se complaint must still contain specific facts to support its conclusions. Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir.1981).

### III.    LEGAL ANALYSIS

Even under the liberal construction, Plaintiff's complaint fails to allege a actual case or controversy as required for standing under Article III. Plaintiff states in his complaint that his lawful

permanent residence status was approved on February 9, 2006 and he received the paperwork reflecting that status on March 15, 2006, well before he filed his complaint on May 11, 2006. (Compl. p. 2).  Based on the one-year effective date rollback, his lawful permanent resident status became effective February 9, 2005.  8 U.S.C. § 1159(b).  Any claims Plaintiff may have had while his application for adjustment of status was still pending are now moot, as the Government has granted his application.  His alleged injuries are that the Government took too long to process his adjustment of status and that it failed to follow the procedures laid out in the Ngwanyia agreement. He asks the Court to direct the Government to explain why it delayed his application for adjustment of status and to order it to comply with the settlement agreement.  Even assuming the delay Plaintiff suffered and the Government's failure to follow the Ngwanyia terms are actionable injuries, the Court cannot provide Plaintiff relief to redress them.  The Government has already complied with the Ngwanyia settlement as to Plaintiff by granting him lawful permanent resident status.   An explanation from the Government as to why it took so long to process Plaintiff's application cannot redress the fact that the adjustment was delayed.  Since Plaintiff has failed to establish Article III standing, his complaint must be dismissed.

Furthermore, Plaintiff fails to establish a jurisdictional basis upon which the Court might hear his claim.  Sovereign immunity is a complete bar to suit unless Congress explicitly waives it. Testan, 424 U.S. at 399.  Plaintiff references in his complaint 8 U.S.C. § 1159(b), the immigration statute which provides for the adjustment of status of refugees.  That statute does not contain a waiver of sovereign immunity, nor does the Court know of any statute or doctrine which does confer jurisdiction over Plaintiff's claim.  Since the United States has not waived sovereign immunity as to Plaintiff's claim, the Court has no subject matter jurisdiction over this suit.

Likewise, the Court's continuing jurisdiction over the Ngwanyia settlement agreement does not establish a basis for subject matter jurisdiction over Plaintiff's claim.  Once he received his adjustment of status, he was no longer a member of the Ngwanyia class.  Even if he were still a class member, there is no relief the Court can provide to his complaint that his adjustment of status was delayed.  The Ngwanyia court specifically ordered that it would not permit backdating of lawful permanent resident status for class members beyond the normal one year set by statute.  Ngwanyia, 376 F. Supp. at 930.  Since the Court has no subject matter jurisdiction over Plaintiff's claim, his complaint must be dismissed.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss [#17] be **GRANTED** .


DATED: March 13, 2007                     s/ *Franklin L. Noel*
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 30, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words.  A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 30, 2007** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.